FILED

03/15/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0683

DA 19-0683

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 54N

STATE OF MONTANA

 Plaintiff and Appellee,

v.

LYNDSEY MAE LALICKER,

 Defendant and Appellant.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 18-129-AX
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

 For Appellant:

  Chad Wright, Appellate Defender, Deborah S. Smith, Assistant Appellate
Defender, Helena, Montana

 For Appellee:

  Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

  Marty Lambert, Gallatin County Attorney, Bjorn Boyer, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs: February 9, 2022

Decided: March 15, 2022

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Lyndsey Mae Lalicker (Lalicker) appeals from her jury conviction and the subsequent June 10, 2019 Sentencing Order of the Eighteenth Judicial District Court, Gallatin County, finding her guilty of, and sentencing her for, the offense of parental interference, a felony, in violation of § 45-5-634, MCA. We affirm.

¶3 On appeal, Lalicker challenges the sufficiency of the evidence to support her conviction. Specifically, she asserts the State "failed to prove that [Lalicker] knew she had no legal right to parent [child] during the weekend in question[.]"

¶4 We review whether evidence is sufficient to support a conviction de novo. *State v. Boyd*, 2021 MT 323, ¶ 12, 407 Mont. 1, 501 P.3d 409. The inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Boyd*, ¶ 12. The question is whether sufficient evidence exists to support the verdict, not whether the evidence could have supported a different result. *State v. Daniels*, 2019 MT 214, ¶ 42, 397 Mont. 204, 448 P.3d 511.

¶5 Section 45-5-634, MCA, provides, in relevant part:

2

(1) A person commits the offense of parenting interference if, knowing that the person has no legal right to do so, the person:

. . .

(b) is one of two persons who has parenting authority of a child under a court order and takes, entices, or withholds the child from the other when the action manifests a purpose to substantially deprive the other parent of parenting rights.

Lalicker was charged with one felony count of parenting interference alleged to have been committed on the weekend of April 14, 2018. Lalicker and Luke Oyler (Oyler) are the parents of L.L. Since L.L's birth, they have engaged in contentious, ongoing litigation regarding the parenting of their child. Ultimately, the court handling their parenting plan action issued a parenting plan which provided each Lalicker and Oyler parenting time with their child and provided for a graduated parenting schedule which gradually increased Oyler's parenting time. Multiple disputes arose as to the parenting plan such that the Standing Master appointed a parenting coordinator, K.C. McLaughlin (McLaughlin), to assist the parties to progress to implement the final Parenting Plan. On December 29, 2017, the Standing Master ordered, "[t]he parties shall comply with Ms. McLaughlin's directives and scheduling of parenting time on time and as scheduled." The District Court subsequently confirmed this order and reiterated, "the parties will comply with [McLaughlin's] directives."

¶6 At the beginning of March 2018, McLaughlin determined Oyler had progressed to phase 6 of the parenting plan entitling him to alternating weekend parenting. McLaughlin

3

set the new alternating weekend schedule to begin on March 17, 2018.[1] Under this ongoing alternating weekend schedule, Oyler was to have parenting time the weekend of April 14-15, 2018. On April 3, 2018, Lalicker advised she would be in Salmon, Idaho, for an annual horse auction April 12-15, 2018, and requested Oyler switch weekends as she wanted to take L.L. with her. Oyler declined as he suspected that if he agreed to an alternative parenting time, Lalicker would not stick to her word and would not provide L.L. for the alternative time.[2] On April 5, 2018, Lalicker filed a motion seeking an order to switch weekends so that Oyler would not have scheduled parenting the weekend of April 14, 2018. Following this, as Oyler had declined to switch weekends, McLaughlin decided to "let it lie at that," but did indicate that as the parties moved through the parenting plan phases, the plan could be further augmented in the future. On April 9, 2018, the Standing Master issued an order declining to rule on pending motions, including Lalicker's motion to switch weekends, as Lalicker had appealed the parenting plan to this Court.[3] On April 14, 2018, Lalicker emailed Oyler advising she and L.L. were out of town and

---

[1] Lalicker objected, asserting the alternating weekend should occur so that L.L. would be with her on weekends where she parented her son from a different relationship. McLaughlin denied this request, maintaining the onset date of the alternating weekends for March 17, 2018.

[2] Maggie Braun, Oyler's attorney, advised Lalicker via email that Oyler did not agree to switching weekends and further advised that absent a court order requiring such, Lalicker was required to exchange L.L. at the usual drop-off/pick-up location on April 14, 2018. Oyler, through Braun, instead suggested he pick L.L. up from Lalicker on April 12, 2018, before she left town and Lalicker could then pick L.L. up from him upon her return. Lalicker did not respond.

[3] On November 27, 2018, this Court affirmed the Parenting Plan. *Oyler v. Lalicker*, No. DA 18-0125, 2018 MT 283N, 2018 Mont. LEXIS 405.

unilaterally asserted that as Oyler had failed to switch weekends with her, he had forfeited his weekend parenting time.

¶7 On April 14, 2018, Oyler, McLaughlin, and Braun appeared at the Bozeman Law and Justice Center for the scheduled child exchange. Lalicker did not appear and did not answer when Braun and McLaughlin each tried calling her. Oyler, Braun, and McLaughlin then went inside the Law and Justice Center where they met with Deputy Clark to report Lalicker's parenting interference. They reported they believed Lalicker to be in Idaho working a horse sale. Deputy Clark attempted to reach Lalicker by phone at 11:30 a.m., but she did not answer. After consultation with the County Attorney's office, Deputy Clark then secured a warrant for Lalicker's arrest. Later in the day, Lalicker returned Deputy Clark's call. She related her various complaints about Oyler and McLaughlin's refusal to modify the commencement date of the alternating weekend parenting arrangement. Deputy Clark advised Lalicker she was committing a crime and that she should immediately return L.L. to Oyler. Lalicker reported she would bring L.L. back as soon as she was done working, probably the next morning. When questioned as to L.L.'s whereabouts, Lalicker was evasive and did not answer the question directly. Ultimately, she agreed to return with L.L. late that night. At the end of the call, Idaho deputies arrested Lalicker. L.L. was located not with Lalicker in Idaho but with Lalicker's father in Dillon, MT, and was ultimately returned to Oyler's care.

¶8 At trial, the State called four witnesses—Oyler, McLaughlin, Braun, and Deputy Clark. At the close of the State's case, Lalicker brought a motion to dismiss for insufficiency of the evidence, which the District Court denied. Lalicker called no

witnesses. The jury returned a guilty verdict. The District Court subsequently deferred imposition of sentence for a period of six years. The District Court also imposed a fine of $2,500, along with various other fees. Lalicker did not object to the fine or fees. The District Court, upon Lalicker's request, permitted a payment plan to pay the fine and fees.

¶9 From our review of the record, when viewed in the light most favorable to the State, sufficient evidence was presented to support Lalicker's conviction for parenting interference in violation of § 45-5-634, MCA. The State proved, and Lalicker does not contend otherwise, that both Lalicker and Oyler were granted and entitled to parent-child contact under a court-ordered Parenting Plan. Oyler testified as to the difficulties he encountered in securing his parenting contact over time. McLaughlin also testified to difficulties in working with Lalicker. From the testimony of Oyler, McLaughlin, and Braun, the jury could reasonably have found that Lalicker knew she had no right to parent L.L. on the weekend of April 14, 2018. Additionally, Lalicker's actions support such a finding. Lalicker clearly knew Oyler was to parent L.L. the April 14, 2018 weekend or there would have been no need for her to seek a court order to switch weekends. Lalicker failed to obtain a court order, but then unilaterally asserted Oyler forfeited his April 14, 2018 weekend parenting time. As per Deputy Clark's testimony, Lalicker was evasive in answering questions as to L.L.'s whereabouts and, rather than expressing confusion that it was her parenting time, she blamed Oyler and McLaughlin for not giving in to her demands to switch the weekend schedule.

¶10 Based on the evidence presented at trial, the jury could reasonably conclude Lalicker manifested a purpose to substantially deprive Oyler of his parenting time. Knowing it was

Oyler's weekend to parent L.L., she took L.L. to her parent's home in Dillon, MT, and then frustrated Deputy Clark's attempts to learn L.L.'s whereabouts. We agree with the State that the jury could rationally infer that because Lalicker was not spending time with L.L. herself while she was in Salmon, Idaho, and she had left L.L. in Dillon with Lalicker's father, her only purpose in absconding with L.L. was to deprive Oyler of his parenting time. Lalicker, in essence, admitted such when she explained to Deputy Clark that she did not make alternate arrangements to exchange L.L. to Oyler not because she thought she was adhering to the parenting plan but because she did not trust Oyler.

¶11 In her briefing, Lalicker provides a lengthy discussion regarding the legislative history of § 45-5-304, MCA, dealing with the offense of custodial interference—an offense with which Lalicker was not charged and which is not at issue in this appeal. Lalicker discusses the concept that the law favors return of the child to where the child belongs with enforcement through contempt rather than prosecution. Lalicker seems to suggest that since she told Deputy Clark she would return L.L. and as she was then not arrested with L.L., the State's evidence was insufficient. Lalicker did not raise this defense or any other affirmative defense below. Further, we agree with the State that the record does not establish Lalicker sought to voluntarily return L.L. to Oyler, but rather that she was less than forthright as to L.L.'s whereabouts. Even if we were to accept the premise that the law favors return of the child and enforcement through contempt rather than criminal prosecution, the State is not barred from prosecuting parenting interference—or even custodial interference—offenses where in its discretion it deems such necessary.

7

Lalicker's arguments in this regard do nothing to negate the sufficiency of the State's evidence at trial.

¶12 Lastly, Lalicker asserts the District Court imposed an illegal sentence as the District Court failed to fix a total financial obligation that is payable within Lalicker's six-year deferred sentence and set a monthly payment amount rendering it impossible to satisfy the total amount during the deferral period prohibiting Lalicker from terminating her deferred sentence early pursuant to § 46-18-208(6)(c), MCA.

¶13 Here, the District Court imposed a fine of $2,500 and other fees of $180 for a total financial obligation of $2,680. Lalicker did not object or raise any issue as to her ability to pay. Further, when the court inquired as to whether she desired a payment plan, she readily indicated she did. The court set the minimum monthly payment at $25 to commence August 1, 2019.

¶14 As Lalicker points out, in general, failure to object to a fine or fees prohibits a defendant from challenging such on appeal. *State v. Kotwicki*, 2007 MT 17, ¶ 22, 335 Mont. 344, 151 P.3d 892. *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979) provides an exception to the contemporaneous objection rule "and allows appellate review of a criminal sentence that is alleged to be illegal or in excess of statutory mandates, even if the defendant raised no objection in the trial court." *Kotwicki*, ¶ 8, citing *Lenihan*, 184 Mont. at 343, 602 P.2d at 1000. Here, as in *Kotwicki*, the fine amount was authorized by the offense statute and despite the district court's failure to consider Lalicker's specific ability to pay, it was not an illegal sentence under *Lenihan*, but rather merely an objectionable sentence. Lalicker failed to preserve her ability to pay argument for appeal. Further, the

8

District Court was statutorily authorized pursuant to § 46-18-234, MCA, to allow Lalicker to pay her fines and fees in installment payments. Permitting Lalicker to avail herself of a payment plan does not make her sentence illegal and it does not preclude Lalicker from paying her financial obligation sooner should she desire to avail herself of the opportunity to terminate her deferred sentence early pursuant to § 46-18-208(6)(c), MCA.

¶15 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶16 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR